IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 17-16 Erie |
| | ) | |
| NATHAN WILLIAMS | ) | |

**SENTENCING MEMORANDUM**
**OF THE UNITED STATES**

Williams seeks a downward variance of ninety-one months below his applicable Sentencing Guidelines range. His obvious sexual interest in young children, coupled with the enormity of his well-organized collection and Williams' distribution of his horrible stockpile calls for a sentence well within his Sentencing Guidelines range.

**Factual Background**

On December 12, 2016, Pennsylvania State Police Corporal Robert Pearson identified a computer with IP address 174.100.11.254 which was sharing child pornography on the BitTorrent network. Corporal Pearson was able to download eight files directly from the computer with IP address 174.100.11.254. The eight files all contained images depicting the sexual exploitation of minors. In addition, Corporal Pearson also downloaded partial files directly from the computer with IP address 174.100.11.254. These files, which were viewable .mpeg movies, contained scenes depicting the sexual assault of prepubescent minors by adult males.

After the investigation was referred to the FBI, Special Agent Jason Crouse determined that IP address 174.100.11.254 was assigned to and administered by Time Warner Cable/Road Runner. On February 22, 2017, the FBI served an administrative subpoena on Time Warner

Cable/Road Runner requesting subscriber information for IP address 174.100.11.254. On February 23, 2017, Time Warner Cable responded to the subpoena by providing information that indicated that the subscriber to IP address 174.100.11.254, on December 12, 2016, when the files containing the child pornographic material were downloaded by Corporal Pearson, lived in McKean, Pennsylvania.

Based on this information, the FBI obtained a federal search warrant for the implicated residence. The search warrant was executed on April 4, 2017. Upon arrival at the residence, the FBI encountered Nathan Williams. He was provided a copy of the search warrant and the nature of the investigation was explained to him. Williams was then given his *Miranda* rights, signed a rights waiver and agreed to speak with the interviewing FBI Special Agents.

Williams admitted that he used his laptop to search for and download child pornography. He revealed that in the past he had downloaded child pornography using a desktop computer and on at least one occasion had used his mother's computer for that purpose. Williams stated that he had been obtaining child pornography for approximately five to six years. He revealed that he used uTorrent and BitTorrent software to search for and obtain child pornography.

Williams also revealed that he utilized external hard drives and multiple thumb drives to store his child pornography and adult pornography. Williams used color-coded tags to catalog his pornography collection with black signifying child pornography. He also used some markings on the tags to indicate their content, with the child pornography material labeled with an "I" for illegal. He stated that he preferred child pornography depicting preteen girls 12 years of age and up. Williams revealed that he would masturbate to the child and adult pornography. He also stated that he took a variety of anxiety and depression related medications that made achieving an erection difficult so he utilized child pornography to get an erection and masturbate.

On May 24, 2017, Williams was interviewed over the phone by FBI Special Agent Crouse for approximately five minutes. During that brief discussion, Williams acknowledged that he knew how BitTorrent functioned and was aware that he was sharing his child pornography with other BitTorrent users. He admitted that he knew that whatever he placed in his BitTorrent shared folder, such as movies, child pornography or other items, could be downloaded from his shared folder.

Numerous hard drives and digital data storage devices were seized from Williams' residence and a forensic examination of that equipment revealed the presence of tens of thousands of items of child pornography.

## Argument

### A. Legal Context

Numerous courts have emphatically expressed the wretched consequences of child pornography. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child pornography by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning:

> Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years."

> Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id*. (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child pornography defendant. In denying the defendant's challenge to the legitimacy of the child pornography guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

### B. Sentencing Protocol

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008). First, "a district court must begin the process by correctly calculating the applicable

Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)).  Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id. (*citing *Gunter*, 462 F.3d at 237).  Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose."  *Wise*, 515 F.3d at 216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

### C.  Applicable Guideline Range

Both parties agree that the Sentencing Guidelines range applicable to Williams is 151 to 188 months of incarceration to be followed by a term of supervised release of not less than five years to life.

### D. Departures

The United States is not seeking an upward departure. A sentence within the 151 to 188 month guideline is justified, reasonable, and appropriate in this case.  Williams does not seek a downward departure based on any specific provision of the Sentencing Guidelines. Rather, Williams is seeking an enormous downward variance of ninety-one months to the mandatory minimum sentence of sixty months.

Williams takes issue with the imposition of two offense levels for his use of a computer to commit the crimes.  It is well established that the use of a computer enhancement does not constitute impermissible double counting.  *United States v. Ziska*, 602 F. App'x 284, 289 (10th Cir. 2015).  Williams seeks a downward variance because everyone uses a computer now to

5

commit child pornography offenses. There is significant irony to Williams's claim. The penalty was enacted to curb the explosion of child pornography on the Internet. The fact that Internet pornography is so pernicious is not a basis to reduce penalties. Indeed, there is no other area of criminal law where, when severe crime becomes more common, the penalties are reduced. This argument also ignores the purpose of the enhancement. Due to the wide dissemination and instantaneous transmission, computer-assisted trafficking of child pornography is extremely difficult for law enforcement officials to stop. *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104-90, at 3-4 (1995), as reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a computer aims at punishing *a distinct harm* beyond the mere possession of child pornography. *United States v. Tenuto*, 593 F.3d 695, 698-99 (7th Cir. 2010).

Williams also takes issue with the number of images enhancement claiming that it does not reflect current technology and the ease by which an offender can accumulate material. This objection hardly applies to Williams who amassed thousands of items of child pornography and actively cataloged the material with a black color code and an "I" for illegal. Williams intentionally amassed an enormous amount of child rape material and kept it well organized. He fully understood that he was sharing his awful hoard via his peer to peer software. Indeed, it seems that he did little else beyond collect and organize his pornography collection.

  **E**. **Section 3553 Factors**

When sentencing a defendant, the Court's reasoning must be guided by all of the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background. *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). In pertinent part, these factors include:

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
  (3) the kinds of sentences available;
  (4) the kinds of sentence and the sentencing range established for -
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
  (5) any pertinent policy statement-
   (A) issued by the Sentencing Commission ...
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all of the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate manner in which to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a sentence within the 151 to 188 month guideline range.

  **1. Nature and Circumstances of the Offense**

Williams was in possession of thousands of images and movies of child pornography, which he obtained from the Internet using his computer. His repulsive collection includes numerous images and movies of young children being raped and humiliated. Williams' conduct did not involve merely collecting the material for his own sexual gratification. He took the extra step of knowingly disseminating this despicable material to other like-minded deviants.

"An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, Office of Juvenile Justice and Delinquency Prevention, *Child Molesters: A Behavioral Analysis–For Professionals Investigating the Sexual Exploitation of Children,* 107 (5th ed. 2010). Williams's material was not merely seventeen-year-olds modeling naked. No, his stash of depravity was rife with young children being raped and abused. These images and movies are so repulsive that only someone with a profound interest in them would hold them close.

Williams did not stumble upon child pornography by accident and decide to keep a little sample. Rather, he amassed tens of thousands of images and movies of child rape and then labeled the thumb drives containing this depravity with an "I" for illegal. Williams cannot claim that he was just a passive collector. His knowing distribution activity alone should disqualify him from a mandatory minimum sentence.

### 2. History and Characteristics of the Defendant

Williams has not explained why his history of mental health problems should result in less jail time. If anything, these issues should cause the Court to have less confidence in Williams' ability to be law abiding when released back into the community. His history of mental instability makes him more of a danger to the community.

The notion that the challenges faced by Williams in his life are a justification for his crimes is offensive. Every individual faces challenges in their life, some more severe, some less severe. But no challenge excuses or mitigates the types of vile offenses committed by Williams. The victims of his crimes—children exploited and recorded in the worst moments of their lives—are the ones who experience challenges beyond imagination.

Williams has also not explained how his difficult upbringing and mental health problems

have anything to do with collecting child pornography. Surely being depressed did not cause him to enjoy watching young children being raped. He was not corralled unwillingly into this crimes by a series of unfortunate life circumstances. Rather, he chose his path and unwaveringly stayed on that path for years until he was caught. There is little doubt that if Williams had not been caught, he would still be enjoying his child pornography collection today.

### 3. The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.(quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* The Supreme Court has long recognized that sexual abuse has devastating and long lasting effects on children. *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment. *Kennedy v. Louisiana*, 554 U.S. 407, 447-70 (2008).

Williams distributed, received and possessed child rape photos and movies for years. Surely a sentence ninety-one months below the bottom of his Guideline range does not adequately reflect the gravity of such conduct.

### 4. Impact on the victims

Congress has plainly indicated that "[e]very instance of viewing images of child pornography represents a ...repetition of their abuse." 18 U.S.C. § 2251, (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub.L.No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)). The words of Congress and many courts are echoes of the victims themselves.

Williams's child pornography collection included images of forty-six (46) known victims, one of whom, the Tara series victim, is seeking restitution. It is obvious from Tara's victim impact statement the terrible toll she has suffered. She has great difficulty trusting anyone and is extremely uncomfortable being in public. These effects will likely last a lifetime. In her victim impact statement, Tara wrote the following:

> Every time someone views this trash, they are once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so. Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover. As a teen, I now realize the extent of people looking at these and I'm concerned about their locations fearing that they will find me. These people need to be punished for taking away a major part of my childhood and sense of security.

Plainly, the negative consequences that Williams will experience from his conviction pale in comparison to the everlasting and devastating impact on these most innocent victims. The consequences for Williams were entirely foreseeable and of his own making. The victims continue to suffer enormously when Williams and his ilk entertain themselves with pictures of these young victims being raped.

Williams possessed two images of Tara. She is seeking restitution relative to her still unreimbursed expenses of $18,136.40. Her documentation in support of her restitution request was attached to her victim impact statement. The United States suggests that in light of the

number of Tara series images that Williams possessed, the Court order Williams to pay $1,000, or $500 for each Tara image Williams possessed.

### 5.  The Need for the Sentence Imposed to Afford Adequate Deterrence

#### a.  General Deterrence is an Important Factor in Sentencing

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")).

In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated "general deterrence ... will have little [if] anything to do with this particular case." *Id.* The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]" *Id.* (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

The Court is in a position to send a clear message to the community that those who collect child pornography will pay a very heavy price. The goal of deterrence is realized if even

one child pornography collector is deterred. A sentence within the applicable guideline range will accomplish this goal. A mandatory minimum sentence ninety-one months below the bottom of the Guideline range most definitely will not.

### b. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

This is the factor involving the incapacitation or specific deterrence of the defendant that the Court is to consider. *See Irey*, 612 F.3d at 1210. Since Williams has a variety of problems it is easy to conclude that he will have a difficult time overcoming his demonstrated sexual interest in young children. As a result, the Court should impose a significant guideline range jail sentence and a considerable term of supervised release in order to ensure that the danger to the community posed by Williams is minimized as much as possible.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

In *Goff, supra*, the district court sentenced a child pornography defendant to four months imprisonment despite an applicable guideline range of 37 to 46 months. The Third Circuit vacated the sentence and remanded for resentencing, holding that such a lenient sentence was unreasonable. *Goff*, 501 F.3d at 262. The court opined that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of § 3553 factors. Specifically, the district court did not adequately consider the nature and circumstances of the offense, the need to promote respect for the law, the avoidance of unwarranted sentencing disparities and affording adequate deterrence. *Id*. at 258. Goff downplayed the seriousness of the offense by implying that he committed a victimless crime driven by his curiosity. The Third Circuit emphatically rejected these claims. *Id*. at 258-59.

Goff also argued that he was entitled to a variance because he had never acted out in a sexual way with children. The Third Circuit vehemently disagreed with this argument, reasoning:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's pornography crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id.* The Third Circuit was also thoroughly unpersuaded that Goff's supposedly exemplary life and charitable activities justified such a low sentence. The sentencing court's reliance on Goff's lack of a criminal history was also criticized because many child pornography offenders are first time offenders. *Id.* at 260-61. The Third Circuit also noted disapprovingly that the district court had failed entirely to consider deterrence when arriving at such a drastically low sentence for Goff. *Id.*

Similarly, the child pornography defendant in *United States v. Lychock*, 578 F.3d 214 (3d Cir. 2009), was sentenced to five years of probation and a $10,000 fine despite his guideline range of 30 to 37 months. The government appealed the sentence arguing that it was substantively unreasonable. The Third Circuit agreed and vacated the excessively lenient sentence. *Id.* at 221. Lychock argued that his sentence should have been affirmed because of his age (37), acceptance of responsibility and lack of criminal record. The Third Circuit was not convinced reasoning that none of these factors justified such a drastic deviation from the guideline range. *Id.*

The Third Circuit has also overturned, as excessively lenient and thus substantively unreasonable, a child pornography sentence of five years of probation to begin with six months home confinement, along with a $2,500 fine, in *United States v. Hayes*, 383 F. App'x. 204 (3d Cir. 2010). Hayes' guideline range was 51 to 63 months. The sentencing court focused on

Hayes' lack of a criminal history and supposed low risk of reoffending.  His post arrest psychological treatment and family support were also significant factors in the far below guideline sentence.  The district court also focused on the fact that Hayes had not actually sexually assaulted a child.  *Id*. at 205-06.  The Third Circuit found that none of these reasons justified such an excessively lenient sentence.  *Id*. at 208.  As a result, the Third Circuit vacated the sentence as substantively unreasonable and the case was remanded for resentencing.  *Id*.

Recently, this Court sentenced Nathan Kosmatine to 82 months in jail.  That sentence may be a valuable benchmark for the Court because Kosmatine had the same 151-188 guideline range as Williams in this case.  The two cases are relatively similar in that both defendants pleaded guilty without a plea agreement to distribution, receipt and possession of child pornography.  Kosmatine also claimed that he had significant mental health issues.  However, Kosmatine claimed that he had been previously sexually molested as a youngster, whereas Williams claims he was the victim of prior physical abuse.

One significant difference in the two cases is the amount of material possessed by each defendant.  Kosmatine had approximately 150 images and 70 movies of child pornography.  Williams had thousands of items of illegal material color coded and marked with an "I" for illegal.

### F.  Conclusion

Williams possessed thousands of child pornography images and movies.  His illegal stockpile depicted young children being raped and sexually humiliated. He knowingly distributed his putrid collection to others.  He kept this material close by, well organized and color coded, knowing full well that if caught, he faced serious consequences.  The costs of his unwavering, years long decision to distribute, receive and possess child pornography pale in comparison to

the horrible toll suffered by the child victims whose abuse enthralled Williams.  He deserves a sentence well within his applicable Guideline range.

          Respectfully submitted,

          SCOTT W. BRADY
          United States Attorney

          <u>s/Christian A. Trabold</u>
          CHRISTIAN A. TRABOLD
          Assistant U.S. Attorney
          PA ID No. 75013